Good afternoon, and may it please the Court, it's David Benheim for the Plaintiff Appellate Rebecca Seeger. And you have two minutes reserved for rebuttal, Mr. Benheim. Thank you. The District Court should have awarded plaintiffs only judgment because a condition preceding the termination of any policy for failure to pay the premium is the insurance company is obligated to send a legally valid rates notice. The motion for summary judgment provided evidence that the December 17th notice upon which Massachusetts Mutual relies was invalid, primarily because it stated an amount that was roughly double what was the minimum amount required to keep the policy from terminating. Okay? So, it is understated that had the policy owner paid roughly $367 at the time the policy entered grace, the policy would have remained in force. At the time of what? That the policy entered the grace period. Okay, so the policy entered the grace period. I don't think that's undisputed. It is undisputed, and it's in the policy. So, we can take a look at the provisions of the policy that say that, but it is undisputed, and in fact... Let's look at the provision that says that, because I think that's important. Yeah, that is correct. The policy states on page 62 of the appendix, you have the premium payment options. Okay, so that's like what you get to pick for yourself. You want to pay this annually, semi-annually, quarterly, or monthly. Okay? Now, the policy also states that if someone wants to change their loan, if they've picked, let's say, semi-annually, which is what actually Mr. Singer picked over here, and he wants to change that loan to quarterly, right? All he has to do is actually send in the quarterly payment. When? When the policy enters the grace. That's not what the policy says, is it? I thought it says, as of any premium due date. Where does it say? Right, so the way we understand it is the premium due date is the date that the policy will actually terminate, not necessarily the due date on which it first becomes due. You understand that as a matter of interpretation of the policy, or as a matter of interpretation of state law, or where does that come from? But you've given up your contract claims. I'm sorry? You've given up your contract claims. You only argue the adequacy of the notice here, don't you? I don't believe that is true. We've argued that the contract allowed, and that was one of the points we made, which is Mr. Singer, in fact, did change the mode in 2018. I'm looking at your brief. The district court erred in finding that the grace notices were not in violation of New York insurance law. I don't see you arguing that there's a breach of contract here. Well, it's related. Well, no, sir. You argued the statute. You argued that you're entitled to relief under the law, not under the contract. Well, it's a violation of the statute because the contract allowed a lower amount. So I don't see how you could ignore the contract when trying to determine whether New York insurance law 3211. I'm not ignoring anything, but I would suggest that there's a decent breach of contract claim that you didn't present to us. Go ahead. Well, our second argument was, and that's not why we should have been entitled to some reduction. The question is whether they complied with the notice requirements of the statute, right? Well, that's the problem. Well, let me finish. I'm sorry. And so then the question is, what does the statute mean with regard to what the notice should say, correct? And the statute requires that it should say the amount of such payment, the date when due, and the place whereupon it's payable, correct? Correct. All right, and you say that the amount of the payment should have been a lower payment because, pursuant to the contract, he previously altered the payment terms or that he could have altered the payment terms by offering to pay a lower amount at the time it was due in December of 2018? Yes, so we made both arguments. They support our motion for somebody to have payments. But he didn't make an offer of payment. He made no payment. Had he made a payment, had he actually made a payment of $300 and some odd dollars and the insurance company said, no, no, you're in default, you owed $640 or whatever the semiannual amount was, I could understand your argument. But he made no offer of payment, did he? Well, he did not make an offer of payment at the time. Doesn't the policy specifically require that if he's going to – that you can alter the terms of payment by making a payment consistent with the lesser amount, if that's what you want to do, at the time of the due date? Yes? Well, I think we're completing two different arguments that I'm making here. Okay. So, yes, we are making the argument that Massachusetts Mutual's motion for something should have been denied because there's a question of fact whether or not he in fact did attempt to make payments. How much was due in December under your theory? It would be $300. It was in the chart on – on the – on the – Okay. And why? $326.22. Why? Why would that do it that time? Because that was the minimum amount that – well, for two reasons. One reason is because that's the minimum amount that would be required to keep the policy from terminating. That's reason number one. Does the policy say he should offer the minimum amount every time? Wasn't he – wasn't he regularly paying a semiannually? Yes. He wasn't paying $300. He was paying $640 twice a year. Correct. So – So that was, at least according to how he was acting with the insurance company, the amount that was due on that date, wasn't it? So let me speak to that because that was my second point, which is he tried to change that from the semiannual, the $600 amount, to the $360 amount, and he was denied that right by Massachusetts Mutual even though it was a right that he had. And he tried to do that. It's in the appendix, page 812. It's a telephone call where he did that. On page 812. Right. So it seems to me that the policy is relevant to your notice claim and that under the policy there's two ways to make the minimum amount that – the quarterly amount. We don't have that. Or payment at the due date of a more frequent lower amount. And we don't have that either. And so that – we looked at the policy to know what the amount due was, what the minimum amount due was. And having failed either of those things, the minimum amount due seems to me to be the amount of the $600 figure, not the $300 figure. So if I could address that. The first is that we argue and we presented evidence in the record that shows that he in fact tried to lower the amount the year before and was denied the opportunity to do that by Massachusetts Mutual. Well, this is what he said. This is from JA-115. They said he had to pay the full amount. Then he said, well, is it possible – before they said, no, you have to pay the full amount, he said, is it possible if I pay half now and two months later another half? That doesn't sound like altering the premium to me. It sounds like an installment plan. That's going from semi-annual to quarterly. Wait a second. No, that's not what he's doing at all. He owes a semi-annual payment. January 2018 he calls MassMutual about that – the December 2017 payment about it. And he says as follows, quote, could he send half or only – or could he send half or only full? And he said payment – you should have to pay the full. Then he said, is it possible can I pay you half now and two months later another half? That would be a quarterly. But our argument is that at the very minimum a fact finder needs to look at that and determine whether he in fact tried to lower the amount. He's saying I want to pay you the semi-annual. I want to pay you the quarterly. That's not – well, that's not what he said. That's not what – What's the difference if you pay the full amount, which is the semi-annual amount, and say I want to pay half that, which is the quarterly amount? What is the difference between that and just changing it to quarterly? But you said it depends on what he said. Said is not written notice. The policy requires written notice. So what is the relevance of what was said? Yeah, well, it's true. But if they prevented him from providing the written notice, that's our argument. By telling him he can't do it, they basically told him you don't have that right when he didn't in fact have that contractual right. So that's the issue of fact, which we think would prevent Massachusetts Mutual from obtaining something. But we also argue that the relevance of that conversation has never happened. The law is accepted in New York that a grace notice must be the least amount necessary to prevent a termination. That is accepted in this Fine decision. That's in a number of other decisions that we cited, the Weiss decision, the Lebowitz and Halberstadt. And so even if that quote never happened, it is undisputed that if he would have paid some of the $326 amount. At the payment due date. At the payment due date. Right. At the payment due date, he would have been able to prevent the policy from terminating. And did that happen? Did he pay that amount at the payment due date? He didn't. Okay. So if there's an argument that, and if I can address that point. And then you've got two minutes for rebuttal. So finish this point, and then you could either use the two minutes or save it. I'll just finish the point with that. If there's an argument that a policyholder is obligated to offer payment even if there was the conditions received, which is a voucher, so it was not sent.  In Halberstadt, for example, the court said, look, if there is no valid grace notice, which is a condition proceeding to the termination, the policyholder is not obligated to attempt a payment. In fact, the way the law looks at it is. There was no grace notice. Therefore, the condition proceeding wasn't met. Therefore, there was no termination. All right. Thank you, Mr. Benham. You have two minutes for rebuttal. We'll hear from Mr. Tilley. Thank you, Your Honor. This is the court. I'm William Tilley. I'm on behalf of the Massachusetts Legal Life Insurance Company, the appellee in this case. We would ask this court to affirm the summary judgment opinion and correspondence order from the district court, which was properly decided. Mr. Benham and I have raised three arguments on behalf of this client. First, there's really two notices that issue, Your Honor. First, there's a premium due notification and then a grace notification. Mr. Benham claims on behalf of this client that that did not comply with New York insurance law, section 3211. MassMutual would submit to Your Honor that it pretty clearly does. There are four elements of a valid notice, the amount of premium due. The city has been there, $644.74. I would just want to emphasize that that's the amount of premium elected by the insurer. So if an insurer pays after the due date but in the grace period, so if he paid $362.22 at the due date, that would reset the payment to quarterly rather than semiannual? Correct. And that's what the policy is. And so if he pays that amount a day after the payment due date, does that – but within the grace period, does that reset the amount? To be honest, Your Honor, first of all, that didn't happen in this case. But I actually don't think it would because as of December 10th or January 10th, those are the two semiannual due dates in this policy. You would have to pay the amount that you had elected before. Now, if MassMutual had received a $362 premium payment on, say, January 1st of 2020, my sense is they would have credited that back to the policy and then worked with the policyholder to make – to understand why a less than $644.74 payment was made. Of course, that did not happen here. And I think it's important to note that once that premium payment comes due and you go into grace, you are then – actually, you're actually behind on the payment. So you need to make a good payment during grace. Now, the grace period is regulatory mandated by New York State, and it's a 31-day grace period for base premium products, which this product was. But I understand your answer to the question, and I appreciate the candor. If they had – if you had paid $362.22 after the due date but before the end of the grace period, the policy would not have lapsed. If you had done that – so I think what would have happened is there would have been – there had to have been some clarification effort between the policyholder and the insurer about why a short payment was made because that is less than what was due as a premium due date. And when you elect semiannual premiums, what's that – you have to pay a semiannual premium by that due date. It's just what your honor asked Mr. Ben-Hur in your initial question. And so if, in this case, also Mr. Stanger had wanted to change the premium mode, the premium frequency, he would have had to pay that amount corresponding to the quarterly premium payment by the premium due date, not during grace. And I think the policy is pretty clear on that. However, you can advocate a lower amount during the grace period. I do think we would have had a different tax scenario, and I think at that point we're kind of chasing the hypothetical as to what would have happened. Well, I don't know if it's chasing the hypothetical because the question is what does the notice have to tell me has – minimum amount he has to pay in order to not go into lapse? And I think you've just answered the question that at least potentially the minimum amount he has to pay is less than the semiannual amount. So I respectfully disagree with that, Your Honor, because I don't think that's the case for fixed premium products. When Mr. Ben-Hur cites the cases that he cites, Zillow Field, Stein, and others, they relate to flexible premium products. And that's a material difference in the insurance product. For flexible premium products, the insured – That's why I thought your answer to my question would have been no, the policy would have lapsed if he had done that. Very well. But my point, Your Honor, was strictly that I can't say for sure because I know my client would have, as a matter of customer service, tried to figure out why a customer short-paid during the grace period. And I want to be honest about that. But I do think that as a matter of contract and as a matter of view of law, they would have had every right to reject that short payment during the grace period and lost the policy. I just don't think they actually would have because that's not an estimation. So that, I think, deals with Section 3211 and the requirements for a valid grace medicine under the Bureau of Law. We talked a little bit, and I think from my perspective comprehensively, about the amount cited in the grace medicine and why I think that was the appropriate amount, particularly because the insurer collected that. And finally, Mr. Bernheim, you pointed to this call that occurred about two years before the policy lapsed. And I think that goes to the point where he was discussing, Judge Nathan, and that is when Mr. Singer asked if he could pay half. He actually couldn't pay half. Half of the semiannual amount is not the amount that's necessary to change the policy to a quarter of a vote. You pay a premium for less frequent payments. Correct. It's a small additional charge to pay more frequently because there's additional processing by the company. And that's what's worth in the policy. It's not an A or B or anything. But that's going to – well, number two, the answer to the insurer's question was correct for his viewpoint, too. Once that premium period passed, he had lost the opportunity for that period to change the premium frequency to a more frequent frequency. He would have had to then pay the 644.74, and then for the June payment of that year of 2018, he would have then had to pay the amount corresponding to the lower quarterly amount, and then he would have had another quarterly payment due in that instance in September. Of course, none of that happened, and that's why I think that phone call is at best a red herring. And really, I think honestly, it was a question that was answered honestly by the company. And that's all I have, Your Honor. If there's no further questions, I'll see you for the rest of my time. Thank you, Mr. Tillich. Mr. Benham, you have two minutes. Yes, thank you, Your Honor. And, Judge Binkley, you raise an excellent point. The question is when you can make the quarterly payment before the due date, does that mean the due date or the end of the grace period? That was not argued by Massie Till. You just asked Massie Till that question. Could Singer have paid the lower amount during the grace period? He said he doesn't know. The answer to that question is in the record. Yes, he could have made that payment during the grace period and lowered the amount. It's in the record on Appendix 116 through 117. Now, I'm going to read to you the exchange that I had with Ms. Harrigan, who was a 36th witness for Massie Till in this case, because this is the evidence of his case. And she was playing the recording in which, during the grace period, Mr. Singer asked to pay half, and I think it's a question of whether that was changed to quarterly or not. And the answer he got was no, you can't pay half. So I asked the 36th witness the following question, and this told me during the grace period. As you were able to tell from that call, that was made after notice was received on a prior due date. The information—and I'm going to skip—I can't skip—on a prior due date. She referenced a due date of 2017, I believe. The information she gave Mr. Singer was wrong, isn't it? Answer yes. Question. In fact, he was making a request to pay quarterly. He said, I'll pay half, and then two months later I'll pay the other half, correct? Which we said was about a little less than $15, right? Yes. So Mass Mutual insisted on the entire $644, correct? Yes. Which was wrong, correct? Yes. In fact, even without notice, he could have just paid the quarterly amount. Remember, from that briefed grace period. And that would have carried the policy for another two months beyond that date, correct? Yes. Answer yes. So the evidence is clear. Had the payment been made during the grace period of the lower amount, that would change the mode. And so the lower amount was the actual minimum amount required to pay to keep the policy from termination. And so that makes sense.